UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| KWIN BOES, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:21-CV-666 RLM-MGG |
| | ) | |
| WILLIAM HYATTE and | ) | |
| GEORGE PAYNE, JR., | ) | |
| | ) | |
| *Defendants* | ) | |

## OPINION AND ORDER

Kwin Boes has sued Warden William Hyatte and Deputy Warden George Payne, Jr., in their individual capacities, alleging that they subjected him to unconstitutional conditions of confinement while he was imprisoned at Miami Correctional Facility. Mr. Boes sued from prison, so the Prison Litigation Reform Act's requirement that he exhaust all administrative remedies before suing over prison conditions applies. *See* 42 U.S.C. § 1997e(a). The defendants have moved for summary judgment, and Mr. Boes has cross-moved for summary judgment, on the issue of exhaustion of administrative remedies. Mr. Boes requests oral argument to present legal arguments but not additional evidence. Neither party requested a <u>Pavey</u> hearing. *See* <u>Pavey v. Conley</u>, 544 F.3d 739 (7th Cir. 2008).

For reasons explained in this opinion and order, the court DENIES the defendants' motion for summary judgment [Doc. 12], GRANTS Mr. Boes's motion

for summary judgment, [Doc. 28], and DENIES AS MOOT Mr. Boes's request for oral argument. [Doc. 42].[1]

LEGAL STANDARD

A party is entitled to summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, a court "constru[es] all facts and draw[s] all reasonable inferences in favor of the party against whom the motion under consideration was filed." Hess v. Bd. of Trs. of S. Ill. Univ., 839 F.3d 668, 673 (7th Cir. 2016) (citation omitted). A party can't merely allege a disputed material fact to defeat summary judgment; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); see also Fed. R. Civ. P. 56(e)(2).

A defendant isn't entitled to a jury trial on contested issues involving exhaustion. Wagoner v. Lemmon, 778 F.3d 586, 590 (7th Cir. 2015) (discussing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)). A court holds a Pavey hearing to resolve issues of fact bearing on exhaustion, but "[w]hen there are no disputed

---

[1]   Mr. Boes's action was consolidated for pretrial, non-dispositive matters with several other cases with similar allegations against the same defendants, [Doc. 11], and he requests consolidated oral argument. [Doc. 42]. The exhaustion defense is a dispositive matter, so the court resolves the issue in separate orders.

facts regarding exhaustion, only a legal question, the court may resolve the issue without a hearing. <u>Vela v. Ind. Dep't of Corr.</u>, No. 3:16 CV 51, 2017 U.S. Dist. LEXIS 9279, at *2 (N.D. Ind. Jan. 24, 2017).

BACKGROUND

Kwin Boes alleges that Warden Hyatte and Deputy Warden Payne violated his constitutional rights when they kept him in a restrictive housing unit cell at Miami Correctional Facility for about a month starting in March 2021. He alleges that his cell had broken lights and a window covered with sheet metal, so was extremely dark. The sheet metal wasn't sealed, so snow and rain entered the cell. He was allowed to leave the cell for only fifteen minutes every other day. He claims this treatment violated his Eighth Amendment right to be free from cruel and unusual punishment and seeks to hold Warden Hyatte and Deputy Warden Payne accountable by way of 42 U.S.C. § 1983.

Mr. Boes sued from prison, so the defendants aren't liable if they can show that Mr. Boes didn't exhaust administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).

*Miami Correctional Facility's Administrative Remedies*

Miami Correctional Facility receives and manages prison grievances according to the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, effective since September 1, 2020. In broad strokes, the policy requires that a prisoner complete a formal

3

grievance and two appeals to exhaust a claim. The parties agree that the written policy is as follows.

A prisoner can complain about prison conditions by filing a grievance with the prison. The prison considers only certain issues appropriate for the grievance process, like staff treatment, medical or mental health, acts of reprisal, and other concerns about conditions of care and supervision in prison. A prisoner starts by completing a grievance on State Form 45471, to be completed no later than ten business days from the date of the incident giving rise to the complaint. An offender grievance specialist is to review any grievance within five business days of receiving the grievance. A specialist either rejects the grievance or accepts and records it. A grievance specialist can reject a grievance if it is untimely, relates to more than one event or issue, is illegible, and the like. A rejected grievance is returned to the prisoner with State Form 45475, "Return of Grievance." It is not appealable, but a prisoner can submit a revised State Form 45475 within five business days of when the grievance is returned.

If a grievance specialist accepts the grievance, the grievance is logged into the prison's computer system and filed with any other grievances filed by that same prisoner. The grievance is marked on the prisoner's log with "I – Formal Grievance." The grievance specialist has fifteen business days to investigate and give a response.

A prisoner who is dissatisfied with the prison's response can appeal the response with State Form 45473. Any appeal is due within five business days of the date of the grievance response. A prisoner can also appeal a grievance if

there's no response within twenty business days of when the grievance specialist received the response. An offender grievance specialist is to log the date of receipt of the appeal and forward the appeal to the warden. The warden or his designee is to review the appeal within ten business days of receiving the appeal, and the offender grievance specialist is to give a copy of the appeal response to the prisoner.

A prisoner dissatisfied with the warden's decision can lodge an appeal with the Indiana Department of Correction. The prisoner must check the "disagree" box on the warden or his designee's response and submit the response with the completed State Form 45473 and any supporting documentation. This appeal must be made to the offender grievance specialist within five business days of the warden or his designee's appeal response. A prisoner can also appeal if there's no response within ten business days of when the warden received the first-level appeal. The offender grievance specialist is to document the appeal in the grievance database, logging the prisoner's grievance history with "II – Formal Appeal." An appeal of the warden's decision is reviewed by the Department Offender Grievance Manager and is considered final.

The parties disagree over how this policy was implemented and how Mr. Boes used the grievance process.

### *Warden Hyatte and Deputy Warden Payne's Account*

Warden Hyatte and Deputy Warden Payne assert that Mr. Boes didn't exhaust the grievance process. Their evidence includes the Indiana Department

of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, [Doc. 12-2], Mr. Boes's grievance history, [Doc. 12-3], a grievance dated March 8, 2021, [12-4], a return of grievance dated March 24, 2021, [Doc. 12-5], and a declaration of Michael Gapski, a grievance specialist at Miami Correctional Facility. [Doc. 12-1]. The defendants also include with their response in opposition to Mr. Boes's motion for summary judgment a copy of Mr. Boes's location history, [Doc. 34-1], grievance documents for Jeremy Blanchard, a plaintiff who fully exhausted administrative remedies in a consolidated case, Blanchard v. Hyatte, 3:21-CV-160, [Doc. 34-2], and orientation paperwork signed by Mr. Boes. [Doc. 34-3].

Mr. Gapski reviewed documents relating to Mr. Boes's grievance history and attests to the grievance policy just described. He then attests to Mr. Boes's documented grievance history. He says Mr. Boes submitted a grievance dated March 8, 2021, about his cell conditions. Mr. Gapski's office received the grievance on March 10 and responded with a return of grievance on March 24. Mr. Gapski wrote on the form, "Your grievance is not filled out completely and also contains multiple issues. Each grievance can only pertain to one issue." He explains that the grievance lacked Mr. Boes's Department of Correction number and addressed cell light, the lack of a window, exposed wires, and mace in his cell. He checked the box labeled, "If you choose to correct the problem(s) listed above, you must do so and re-submit this form within five (5) business days." The office received no resubmitted form.

The defendants' copy of the grievance and return of grievance match Mr. Gapski's account except that the return of grievance also has a box checked indicating that the grievance was untimely. [Doc. 12-5 at 1].

The defendants also include a copy of Mr. Boes's grievance history log. The log doesn't include any grievances or appeals for the condition of Mr. Boes's cell.

*Mr. Boes's Account*

Mr. Boes asserts that he exhausted all administrative remedies available to him. His evidence includes his own declaration, [Doc. 26-7 at 5–7], the deposition transcript of Michael Gapski, the already-mentioned grievance specialist at Miami Correctional Facility who also served as Rule 30(b)(6) representative for the prison, [Doc. 26-1], the deposition transcript of Charlene A. Burkett, the Director of the Indiana Department of Correction Ombudsman Bureau, [Doc. 26-2 to 26-5], and the deposition transcript of Stacy Hall, a correctional officer and law librarian at Miami Correctional Facility, [Doc. 26-6].

According to Mr. Boes's declaration, he filed a grievance complaining about his cell's conditions on March 8, 2021. The grievance was returned March 24, 2021. The return of grievance form explained that the grievance specialists rejected the grievance because it wasn't complete, concerned multiple issues, and was late. Mr. Boes doesn't believe the grievance was late and thinks that the incompleteness was immaterial. Although he had left off his Department of Correction number, he says the information must not have been material since

prison staff easily delivered the return of grievance to him. Prison staff knew who the grievance belonged to.

The bottom of the return of grievance form told Mr. Boes he could fix any errors by resubmitting the form within five business days, but the form also told him the grievance was late. Resubmitting the form wouldn't make the grievance less late, so Mr. Boes didn't resubmit a grievance. He didn't appeal because there was no process for appealing a rejection.

Mr. Boes presents Mr. Gapski's testimony as evidence that the grievance process wasn't available. Mr. Gapski, a grievance specialist, testified as Miami Correctional Facility's Rule 30(b)(6) representative. He explained that while the grievance policy let prisoners appeal a grievance response, policy and practice didn't allow a prisoner to appeal  a grievance return, that is, a rejection.

Mr. Boes presents deposition testimony of Charlene Burkett, the Director of the Department of Correction Ombudsman Bureau. The Ombudsman Bureau handles prison complaints independently of the Department of Correction and Indiana Department of Administration but doesn't have enforcement power. The Ombudsman Bureau received several complaints from plaintiffs in the consolidated cases, each claiming that Miami Correctional Facility didn't respond to their grievances.

Likewise, Officer Stacy Hall, who was a law librarian in May or June 2021, attested that thirty to forty prisoners complained to her that their grievances didn't receive responses.

8

DISCUSSION

Mr. Boes and the defendants move for summary judgment on the exhaustion defense. The governing law is thoroughly set out in the court's opinion and order on cross-motions for summary in Rollins v. Hyatte, 3:21-CV-767-RLM-MGG, slip op. at 11–12, which discussion the court adopts by reference.

Warden Hyatte and Deputy Warden Payne's legal argument is straightforward: the prison's policies plainly require a formal grievance and two levels of appeal. Mr. Boes didn't resubmit his returned grievance and their records don't show that Mr. Boes's successfully filed any other grievance about his cell's conditions, so he didn't exhaust administrative remedies.

Mr. Boes's argument is similarly straightforward, and starting there makes for a clearer picture. He argues the prison incorrectly rejected his grievance as untimely then represented that there was nothing more he could do, so administrative remedies weren't available. The date he submitted the grievance was accurate, so he couldn't correct the date and make the grievance any timelier; resubmission was futile. Nor could he appeal; the prison didn't let prisoners appeal grievance rejections. Mr. Boes concludes this is a situation where "the prison's responses so obscured the process that there was no conceivable next step for [Mr. Boes] to take." Reid v. Balota, 962 F.3d 325, 330 (7th Cir. 2020).

The defendants say Mr. Boes should have resubmitted the form to exhaust administrative remedies. The grievance was rejected for two reasons other than

being late — it addressed multiple issues and didn't have Mr. Boes's Department of Correction number — and the defendants say a grievance specialist might have accepted the grievance despite its untimeliness for good cause. "Mr. Boes did not even allow the grievance specialist at the facility this opportunity because he never resubmitted a corrected grievance." [Doc. 36 at 8]. But it doesn't make sense to say Mr. Boes had to try to cure two alleged defects while a third defect, which was an independent and sufficient reason to reject his grievance, couldn't be corrected. Demanding that Mr. Boes fix two problems while the third is unfixable is more a game of "gotcha" or a "test of the prisoner's fortitude or ability to outsmart the system," than it is process of providing notice so prison officials can remedy issues without a lawsuit. Shaw v. Jahnke, 607 F. Supp. 2d 1005, 1010 (W.D. Wis. 2009). Marking the grievance as late was the prison's mistake, so it won't be attributed to Mr. Boes. *See* Dole v. Chandler, 438 F.3d 804, 811 (7th Cir. 2006).

Next, the defendants argue that administrative remedies were available because other prisoners successfully finished the entire grievance process. They cite evidence that Mr. Blanchard, a plaintiff in a consolidated case, 3:21-CV-160, completed all three steps. So, they say, "the evidence in the record shows that at least some offenders in the restrictive housing cells were able to fully exhaust their administrative remedies contradicts Mr. Boes'[s] claim that the administrative remedies were systematically unavailable." [Doc. 36 at 10].

That the prison logged and responded to another prisoner's grievances and appeals doesn't contradict Mr. Boes's claims. Mr. Boes claims that *his* grievance

was improperly rejected and couldn't be appealed, not that no grievance was ever fully appealed. He includes evidence of systemic failures to bolster his claim, but his claim rests on his declaration and the return of grievance form.

The defendants then argue that administrative remedies were available because Mr. Boes received information about the process during admission and orientation, and because his other grievances show he knew how the process worked. This is a red herring. Mr. Boes's argument depends on whether his attempts at advancing this grievance were frustrated. His argument doesn't hinge on whether he was ever told what the policy required on paper. His knowledge of the written policy doesn't undo the prison's mistake of returning the grievance as untimely when timeliness couldn't be corrected or appealed.

In summary, the undisputed evidence shows that Mr. Boes submitted a grievance about his cell conditions and that grievance was improperly returned as untimely. Mr. Boes couldn't correct the mistake because the mistake wasn't his, and policy didn't allow him to appeal the grievance rejection. Mr. Boes exhausted all administrative remedies that were available to him, so he satisfied 42 U.S.C. § 1997e(a) before suing.

A court normally holds a Pavey hearing to resolve factual disputes bearing on administrative exhaustion, but needn't hold a hearing if it can resolve the issue of exhaustion on the documentary evidence. Bessler v. Wexford of Ind. LLC, No. 3:21-CV-691, 2022 U.S. Dist. LEXIS 199409, at *7–8 (N.D. Ind. Nov. 2, 2022). Neither party requested a Pavey hearing and the consistency between Mr. there's no genuine issue of material fact. Accordingly, the court denies the

defendants' motion for summary judgment and grants Mr. Boes's motion for summary judgment without a <u>Pavey</u> hearing.

Mr. Boes requested oral argument to help the court narrow its focus on the voluminous records and briefs across the consolidated cases. Oral argument is unnecessary, so the court denies the request for oral argument.

CONCLUSION

For these reasons, the court DENIES the defendants' motion for summary judgment; GRANTS Mr. Boes's motion for summary judgment; REJECTS the exhaustion defense; and DENIES AS MOOT Mr. Boes's motion for consolidated oral argument.

SO ORDERED.

ENTERED:   August 15, 2023

                    /s/ Robert L. Miller, Jr.
                    Judge, United States District Court